```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                  NORTHERN DIVISION
```

**PATRICIA L. SMITH**                                                **APPELLANT**

VS.                                    CIVIL ACTION NO. 3:15-cv-408-WHB-JCG

**JAMES L. HENLEY**                                                  **APPELLEE**

<u>MEMORANDUM OPINION</u>

This cause is before the Court on a direct appeal, which was taken after Final Judgment was entered following the issuance of a Memorandum Opinion and Order by the United States Bankruptcy Court in <u>In re Patricia L. Smith</u>, Bankruptcy Case No. 13-01920-EE (S.D. Miss.). Through the Final Judgment, Debtor, Patricia L. Smith's, Motion to Dismiss under 11 U.S.C. § 1307(b) was denied, and the Motion of Creditor, Trustmark National Bank, to have the bankruptcy case converted from an Chapter 11 proceeding to a Chapter 7 proceeding, was granted. For the reasons that follow, the decisions of the Bankruptcy Court are AFFIRMED.

## I. Introduction

Debtor, Patricia L. Smith ("Smith"), filed a petition for relief under Chapter 13 of the United States Bankruptcy Code on January 29, 2013 ("First Petition"). In the Summary of Schedules related to the First Petition, Smith listed her secured debt as $2,197,216.60, and her unsecured debt as $6,781.00. The Trustee

later moved for dismissal of Smith's First Petition because she was behind in her plan payments.  An Agreed Order granting the Motion to Dismiss was entered on May 9, 2013.

Smith filed another Chapter 13 petition for relief in bankruptcy court on June 21, 2013 ("Second Petition"), and James L. Henley, Jr. was appointed Trustee.  In the initial Summary of Schedules related to the Second Petition, Smith listed her secured debt as $1,841,716.60 and her unsecured debt as $68,083.61.  Smith later filed an Amended Schedule D, in which Trustmark National Bank ("Trustmark") was listed as having a mortgage in the amount of $425,000.00, that was secured by a piece of real property located in Santa Rosa Beach, Florida. On January 27, 2014, Smith filed a Second Amended Schedule D again identifying Trustmark has having a secured claim for $425,000.00, but stating only that the nature of the lien was a "Mortgage/Personal Guarantor Only."

In July of 2013, Smith filed an Adversary Complaint against Trustmark alleging it had violated 11 U.S.C. § 362(k) by conducting a judicial foreclosure on real property located in Santa Rosa Beach, Florida, which was owned by Smith's wholly owned corporation, Stone Source, a Granite and Marble Company, Inc. ("Stone Source").  An Agreed Final Judgment dismissing the Adversary Complaint against Trustmark was entered on June 18, 2014. In November of 2013, Trustmark filed two separate Proofs of Claim. The first, Claim 4-1, was for an unsecured debt in the amount of

$816,905.12, and was based on a personal guaranty made by Smith. The second, Claim 5-1, was for a secured debt in the amount of $64,610.66, which was secured by real property located in Florida.

On January 27, 2014, Smith moved to amend her Chapter 13 Plan. In her motion, Smith informed the court that she had amended her Schedules to show secure debt totaling $965,528.00, and unsecured debt and priority claims totaling $322,815.00.  The basis for the amendment was Smith's realization that she had been "incorrectly identified as a party responsible for certain secured debts". Smith also indicated an intent to surrender five parcels of real property.  The amendments to Chapter 13 Schedules purportedly caused both Smith's secured and unsecured debt to now be below the statutory limits.  Trustmark and the Trustee objected to the motion to amend, in part, because Smith's claimed debt at the time the Second Petition was filed exceeded the debt limits prescribed by 11 U.S.C. § 109(e).[1]  The Trustee later moved for dismissal of Smith's case on the same grounds, i.e. based on Smith's having had secured debt in the amount of $1,841,716.60, and unsecured debt in the amount of $818,601.17, at the time the Second Petition was filed.

---

[1] Under this statute: "Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $383,175.00; and noncontingent, liquidated, secured debts of less than $1,149,525.00, ... may be a debtor under chapter 13 of this title."

3

On April 7, 2014, Trustmark moved to have Smith's case converted from Chapter 13 to Chapter 7 pursuant to 11 U.S.C. § 1307(c) based on her alleged failure to disclose assets and to disclose a $357,644.48 settlement that had been paid to her company, Stone Source.  The following day, Smith moved to dismiss her case under 11 U.S.C. § Section 1307(b).  Trustmark objected arguing that dismissal was not warranted because Smith had acted in bad faith. A trial on both Motions was held by United States Bankruptcy Judge Edward Ellington.

Relying on In Re Jacobson, 609 F.3d 647 (5th Cir. 2010), a case in which the United States Court of Appeals for the Fifth Circuit held "that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert", Judge Ellington found that Smith did not have an absolute right to have her case dismissed under 11 U.S.C. § 1307(b). See In re Patricia Smith, 530 B.R. 327, 333 (Bkrtcy. S.D. Miss. 2015). Instead, Judge Ellington found the court needed to determine whether Trustmark had shown that Smith had "acted in bad faith or abused the bankruptcy process" before considering her Motion to Dismiss. Id. In making his determination, Judge Ellington applied the "totality of the circumstances test", which requires consideration of the following factors:

4

> (1) the reasonableness of the proposed repayment plan; (2) whether the plan shows an attempt to abuse the spirit of the Bankruptcy Code; (3) whether the debtor genuinely intends to effectuate the plan; (4) whether there is any evidence of misrepresentation, unfair manipulation, or other inequities; (5) whether the filing of the case was part of an underlying scheme of fraud with an intent not to pay; (6) whether the plan reflects the debtor's ability to pay; and (7) whether a creditor has objected to the plan.

In re Resendiz, 2013 WL 6152921, at *4 (Bkrtcy. S.D. Tex. Nov. 20, 2013)(quoting In re Stanley, 224 F. App'x 343, 346 (5th Cir. 2007)(internal citations omitted).

In considering the relevant factors, Judge Ellington found Smith had "abused the spirit of the Bankruptcy Code" (1) because her debt limits were in excess of those permitted under 11 U.S.C. § 109(e) when she filed her Second Petition, and (2) her subsequent attempt to decrease the secured debt limit by surrendering five parcels of real property to her husband, Rodney Woodruff ("Woodruff"), "was a sham." In Re Patricia Smith, 530 B.R. at 346. With respect to the deeds of trust to Woodruff, Judge Ellington found Smith's testimony regarding "the amount of the indebtedness to Woodruff", her "failure to list the deeds of trust in the First Petition", and "the failure of the deeds of trust to be recorded at the time they were executed" to be unconvincing. Id. at 347.

Judge Ellington also found that there was "evidence of misrepresentation, unfair manipulation, or other iniquities" based Smith's (1) attempt to use her personal bankruptcy filing to halt foreclosure proceedings by Trustmark on property owned by her

5

wholly owned corporation Stone Source; (2) providing misleading or inaccurate bankruptcy schedules in which she attempted to conceal a bank account, rental income, and the existence of two lawsuits she had pending against BP at the time she filed bankruptcy; (3) failing to disclose that Stone Source has received settlement proceeds from lawsuits it had filed against BP; (4) purportedly paying the BP settlement proceeds to Woodruff in repayment for loans he had made to Stone Source, even though there was no evidence that Woodruff had made such loans; (5) funneling money into the bank account of Advanced Modular, a company that had not transacted any business for over ten years, and then using the money for her personal use; and (6) depositing proceeds from the BP settlement to the bank account of Stone Source and then using the majority of the funds for her own and her relative's personal use. Id. at 346-48.

Finally, as to the plan itself, Judge Ellington found that while Smith testified that she wanted to pay her creditors in full, after two years in bankruptcy she had not yet filed a viable plan that provides for Trustmark's proof of claim in the amount of $816,905.12; her proposed amended plan would only provide full payment on unsecured claims totaling $322,815.00; and that her creditors would be paid nothing in the event her motion to dismiss was granted. Id. at 348.

Based on these findings, Judge Ellington determined:

6

> As noted above, in order to prevail on its Motion to Convert, Trustmark has the burden of proving that this is an extraordinary case and that [Smith's] actions were atypical and resulted in bad faith. The Court finds that Trustmark has met this burden and overwhelmingly proven that [Smith's] actions were atypical and resulted in bad faith. Like the debtors in <u>Marrama</u> and <u>Jacobsen</u>, Trustmark has shown that [Smith] filed "misleading and inaccurate schedules that attempted to conceal assets from creditors." Further, in examining all of the facts and viewing the totality of the circumstances, the Court finds that [Smith's] plan as proposed was not reasonable; that by her actions, [she] has abused the spirit of the Bankruptcy Code; that [she] has misrepresented and/or manipulated her schedules; and that [she] has no intention to pay her creditors in full. Consequently, pursuant to § 1307(b), the Court finds bad faith exists and that it is in the best interest of the [Smith's] creditors that [her] case is converted to a Chapter 7.

<u>Id.</u> Thereafter, Judge Ellington granted the Motion of Trustmark to Convert, and Denied Smith's Motion to Dismiss. Smith has appealed both rulings.

## II.  Jurisdiction and Standards of Review

The Court may exercise appellate jurisdiction in this matter pursuant to 28 U.S.C. § 158(a)(1), which provides: "[t]he district courts ... shall have jurisdiction to hear appeals from final judgments, orders, and decrees ... of bankruptcy judges." On review, conclusions of law are considered *de novo*, <u>see</u> <u>In re Ark-La-Tex Timber Co., Inc.</u>, 482 F.3d 319, 328 (5th Cir. 2007), while a clearly erroneous standard of review is applied when considering findings of fact made by the bankruptcy judge. <u>See</u> <u>In the Matter of Renaisasance Hosp. Grand Prairie, Inc.</u>, 713 F.3d 285, 293 (5th

7

Cir. 2013). A determination by the bankruptcy court that "a debtor has acted in bad faith is a finding of fact reviewed for clear error." See In re Jaconsen, 609 F.3d at 652 (citations omitted). On review, the Court must "give due regard to the opportunity of the [bankruptcy] court to judge the credibility of the witnesses." Hibernia Nat'l Bank v. Perez (In re Perez), 954 F.2d 1026, 1027 (5th Cir. 1992)(alterations in original)(internal quotations omitted). "The decision to convert a Chapter 13 case to Chapter 7 under § 1307(c) is reviewed for abuse of discretion." Id. (citations omitted).

### III. Discussion

On appeal, Smith argues that the bankruptcy court erred by converting her case from a Chapter 13 proceeding to a Chapter 7 proceeding because the facts did not justify the commencing of an involuntary bankruptcy petition under 11 U.S.C. § 303. Under governing precedent, however, there is no requirement that a finding sufficient to warrant the commencement of an involuntary proceeding be satisfied before a case can be converted under 11 U.S.C. § 1307. To the contrary, the Fifth Circuit has held "that a bankruptcy court has the discretion to grant a pending motion to convert for cause under § 1307(c) where the debtor has acted in bad faith or abused the bankruptcy process and requested dismissal under § 1307(b) in response to the motion to convert." In re

Jacobsen, 609 F.3d at 660. Accordingly, the Court finds this argument lacks merit. The Court additionally finds Smith's argument that her motion to dismiss should have been granted because she was never eligible to proceed under Chapter 13 likewise fails because it is contrary to the holding in In re Jacobsen, which permits a bankruptcy court to convert a proceeding in which the debtor has acted in bad faith or abused the bankruptcy process regardless of whether the debtor has moved for dismissal. See Id. at 661 (indicating that the Fifth Circuit does not "read 11 U.S.C. § 1307(c) as an 'escape hatch' from which to escape" a motion to convert.").

Next, Smith challenges the findings made by the bankruptcy court that she had acted in bad faith. "In reviewing the bankruptcy court's finding of bad faith for clear error, '[o]ur role is not to weigh the evidence ourselves but merely to determine whether the lower court's account is plausible in light of the record viewed in its entirety.'" In re Elliott, 506 F. App'x 291, 293 (quoting In re Jacobsen, 609 F.3d at 662).

> We will not reverse unless, viewing the record as a whole, we are left with the definite and firm conviction that a mistake has been committed. Clear error review is especially rigorous when we review a lower court's assessment of trial testimony, because the trier of fact has seen and judged the witnesses.

Id. at 293-94 (all citations omitted).

On review, the Court cannot conclude that Judge Ellington's finding of bad faith was clearly erroneous. Here, the record below

9

shows that Smith, after her Second Petition was filed, surrendered five parcels of encumbered property to her husband for the purpose of reducing her secured debt to an amount less than the statutory limit of 11 U.S.C. § 109(e). Judge Ellington found the transfer of property was a sham by which Smith had "abused the spirit of the Bankruptcy Code". On review, the Court finds no bases for disturbing this finding.

Judge Ellington also found bad faith based Smith's (1) attempt to use her personal bankruptcy filing to halt foreclosure proceedings by Trustmark on property owned by her wholly own corporation Stone Source; (2) providing misleading or inaccurate bankruptcy schedules in which she attempted to conceal a bank account, rental income, and the existence of two lawsuits she had pending against BP at the time she filed bankruptcy; (3) failing to disclose that Stone Source has received settlement proceeds from lawsuits it had filed against BP; (4) purportedly paying the BP settlement proceeds to Woodruff in repayment for loans he had made to Stone Source, even though there was no documented evidence that Woodruff had made such loans or the amount thereof; (5) funneling money into the bank account of Advanced Modular, a company that had not transacted any business for over ten years, and then using the money for her personal expenses; and (6) depositing proceeds from the BP settlement to the bank account of Stone Source and then using the majority of the funds for her own and her relative's

10

personal use.  In re Patricia Smith, 530 B.R. at 346-48.

On appeal, Smith argues that the bankruptcy court erred by finding bad faith based on her failure to disclose the BP settlement received by Stone Source, and the use of that settlement to repay her husband for loans he made to that company.  Smith argues that because Woodruff was owed more money from Stone Source than the amount of the settlement, there would have been no remaining settlement proceeds to become part of her personal bankruptcy estate and, therefore, the non-disclosure of the settlement does not amount to bad faith.

As to this issue, the record shows that Smith testified that all of the BP settlement proceeds were paid to her husband Woodruff because of the money he had loaned to the company over the years.  Smith also testified, however, that she had no knowledge as to the nature of the loans made by Woodruff, or the amount of money he had loaned the company.  The accountant for Stone Source testified that the loans made by Woodruff were not put on the books maintained by Stone Source at the time they were made, and that he was not aware of any loan documents evidencing any of the loans. At trial, Smith produced no evidence to support her claim that Woodruff had made loans to Stone Source.  The record also showed that upon receipt of the BP settlement funds, Woodruff caused (1) $55,000.00 to be deposited into the bank account of Modular Advanced, a company that had not conducted business for over ten years; (2) $100,000 to be

deposited in the account of Stone Source; and (3) $5,000.00 to be deposited into a personal account used by Smith. Money from all of these accounts was later used by Smith for personal expenses.[2] Having reviewed the record, the Court finds no bases for disturbing the finding by Judge Ellington that Smith's transferring of the entire BP settlement awarded to Stone Source to her husband Woodruff was done in bad faith.

Next, Smith challenges the finding of bad faith made by Judge Ellington with respect to the deeds of trust indicating that Woodruff had a secured interest in five pieces of real property, three of which were not disclosed in Smith's First Petition. As to the deeds of trust, the record showed that although the deeds had purportedly been executed in 2011 and 2012, two of them were not recorded until five days before Smith's First Petition was filed, two were recorded after the First Petition was filed, and one was not introduced as evidence at trial.

As to the reason the three deeds of trust were not reported in Smith's First Petition, the record showed that Smith had not

---

[2] Judge Ellington found Smith's testimony that funds that had been deposited in the bank of account Advanced Modular were used for business purposes was "disingenuous" because that company had not transacted any business for almost ten years. Judge Ellington further found that while some of the debits made on the Stone Source bank account could arguably be considered business related, the vast majority of the debits appearred to evidence personal use by Smith and her relatives. Having reviewed the record, the Court finds no basis for disturbing this finding.

disclosed this information to her attorney at the time the schedules were being prepared. According to Smith, she had given her attorney all of the information he requested and "whatever [she] thought he needed" at that time. Smith further testified, that upon realizing there were discrepancies in the schedules, and that her attorney "didn't have all the information that should of been" in there, either as a result of fault on her part or errors made by his office, she moved to dismiss the First Petition. As to the reason the subject deeds of trust were not timely recorded, Woodruff's attorney, Travis T. Vance, Jr., testified that the belated recordings occurred because his secretaries did not know where to send them for filing after they were executed. Judge Ellington found Smith's and Vance's testimony regarding the alleged amount of the indebtedness to Woodruff, the failure to list the deeds of trust in the First Petition, and the failure of the deeds of trust to be recorded at the time they were executed, to be "unconvincing". As this finding by Judge Ellington is based, in part, on his observations and assessments of the witnesses' demeanor and credibility at trial, and as the Court, after reviewing the record, does not find it apparent that a mistake had been made by Judge Ellington, additionally finds no basis for disturbing these findings by Judge Ellington.

Finally, Smith challenges the finding of bad faith based on her use of the Advanced Modular account. Again, as to this

13

account, the record shows that Advanced Modular had not conducted any business for approximately ten years.  The record also shows that Woodruff caused $55,000.00 of BP settlement proceeds to be deposited into that account, and that the majority of debits made from that account were for Smith's and her relative's personal use.  Although Smith argues there is testimony in the record that she believed she was using the card issued on the Stone Source account when she made her purchases, she also testified that, "at all points in time when [she] used a [credit] card to either get personal or non-personal things" she was aware of which card she was using and from which account it was issued.  In re Patricia Smith. 530 B.R. at 344 (quoting Tr. at 87).  After reviewing the record, the Court finds no basis for disturbing the finding that Smith acted in bad faith by funneling $55,000.00 of the BP settlement proceeds into bank account of Advanced Modular and thereafter using those funds for her personal use.

In sum, on review, the Court finds the finding of bad faith by the bankruptcy court is plausible on the record.  See e.g. In re Jacobsen, 609 F.3d at 662 (upholding a finding of bad faith made by the bankruptcy court in a proceeding in which the debtor had possessed assets and made transfers that were not disclosed in his schedules).  The Court, therefore, affirms the finding of bad faith made by the bankruptcy court.

Additionally, based on Smith's conduct as shown in the record,

the Court also holds that the bankruptcy court did not abuse its discretion when it denied Smith's Motion to Dismiss and granted the Motion of Trustmark to convert her case from a Chapter 13 proceeding to a Chapter 7 proceeding.  Under <u>Marrama v. Citizens Bank of Mass.</u>, 549 U.S. 365, 375 n.11, and <u>In re Jacobsen</u>, 609 F.3d at 662, a bankruptcy court may invoke the bad-faith exceptions to § 706 and § 1307(b), respectively, in cases in which the debtors bad faith is shown to be "atypical" or "extraordinary."  Here, Judge Ellington found:

> That Trustmark has met this burden and overwhelmingly proved that [Smith's] actions were atypical and resulted in bad faith.  Like the debtors in <u>Marrama</u> and <u>Jacobsen</u>, Trustmark has shown that [Smith] filed "misleading and inaccurate schedules that attempted to conceal assets from creditors."  Further, in examining all of the facts and viewing the totality of the circumstances, the Court finds that [Smith's] plan as proposed was not reasonable; that by her actions, [she] has abused the spirit of the Bankruptcy Code; [she] misrepresented and/or manipulated her schedules; and that [she] has no intention to pay her creditors in full.

<u>In re Paticia Smith</u>, 530 B.R. at 348.  Given the actions of Smith, which included making sham transfers of real property to satisfy the debt limits of 11 U.S.C. § 109(e); using her personal bankruptcy to halt foreclosure proceedings on property owned by Stone Source; providing misleading or inaccurate bankruptcy schedules that concealed assets and income; transferring the BP settlement proceeds to her husband Woodruff in repayment for loans he allegedly made to Stone Source, even though there was no evidence that Woodruff had made such loans; and using the

settlement proceeds that Woodruff deposited into business accounts for her personal use, the Court finds the bankruptcy court did not abuse its discretion in finding that Smith's bad faith was shown to be "atypical" or "extraordinary", so as to warrant the converting of her bankruptcy case, and the denial of her motion to dismiss.

Accordingly, the Final Judgment of the bankruptcy court is AFFIRMED.

### IV.  Conclusion

On review, and after considering the Memorandum Opinion of the bankruptcy court and all of the arguments raised by the parties in the appellate briefs, the Court finds the decisions of the bankruptcy court should be, and are hereby, AFFIRMED.

SO ORDERED this the 31st day of March, 2016.

                                            s/ William H. Barbour, Jr.
                                            UNITED STATES DISTRICT JUDGE